OPINION OF THE COURT
 

 Ciparick, J.
 

 The issue presented by these separate appeals is whether the homeowner exemption of Labor Law § 240 (1) and § 241 (6) applies to a structure jointly used for residential and commercial purposes. We conclude that defendants, owners of one-family dwellings who did not direct or control the work, are entitled to the protection of the homeowner exemption, notwithstanding the presence of some commercial activity on their properties.
 

 I.
 

 A.
 
 Bartoo v Buell
 

 Fifty feet from defendant Robert Buell’s residence in Allegany County is a barn in which he stores personal belongings, including a boat and miscellaneous equipment, as well as a neighbor’s sailboat and car. In a separate portion of the barn, Buell leases space to nine individuals to store their golf carts for a $25 annual storage fee..
 

 When the barn roof developed a leak, Buell contracted with General Roofing & Heating, Inc. to repair and paint the roof. During the course of the repair work, three of General Roofing & Heating’s employees, plaintiffs Philip Bartoo, Dennis Pang-burn, and Allen Skiver, Jr., were severely injured when a scaffold platform on which they were working collapsed. Bartoo and Pangburn together commenced one action, and Skiver and his wife commenced a separate action, both sets of plaintiffs asserting claims for, among other things, violations of Labor Law § 240 (1) and § 241 (6).
 

 After the two actions were consolidated, Supreme Court granted plaintiffs’ separate motions for summary judgment and held that the homeowner exemption of Labor Law § 240 (1) and § 241 (6) did not exempt Buell from liability because the barn had been used in part for commercial purposes. In separate orders, the Appellate Division, with two Justices dissenting, reversed and granted summary judgment in Buell’s favor dismissing plaintiffs’ Labor Law § 240 (1) and § 241 (6)
 
 *367
 
 causes of action, holding that the homeowner exemption applied to the facts of this case (see,
 
 Bartoo v Buell,
 
 198 AD2d 819). Subsequently, a judgment of Supreme Court was entered dismissing plaintiffs’ remaining causes of action. Plaintiffs filed this appeal as of right pursuant to CPLR 5601 (a) and (d).
 

 B.
 
 Anderson v Flanagan
 

 Defendant Mary Flanagan, who operates a children’s daycare center in her East Rochester home five days each week, decided to add a bedroom to the first floor of her two-story home. She entered into a contract with Mark Halliman to construct the downstairs bedroom and to install a sliding glass door leading from the bedroom to the backyard.
 

 Halliman’s employee, plaintiff Thomas Anderson, sustained injuries when, in attempting to get down from the roof, he missed a stepladder and fell to the ground. Anderson commenced suit against Flanagan for, among other things, a violation of Labor Law § 240 (1). Supreme Court held that Flanagan, the owner of a one-family dwelling who did not direct or control the work, was exempt from liability under Labor Law § 240 (1) and granted summary judgment dismissing that cause of action against Flanagan. The Appellate Division unanimously affirmed for the reasons stated by Supreme Court
 
 (see, Anderson v Flanagan,
 
 210 AD2d 955) and we granted leave to appeal.
 

 II.
 

 In 1980, the Legislature amended Labor Law §§ 240 and 241 to exempt "owners of one and two-family dwellings who contract for but do not direct or control the work” from the absolute liability imposed by these statutory provisions. The amendments, intended by the Legislature to shield homeowners from the harsh consequences of strict liability under the provisions of the Labor Law, reflect the legislative determination that the typical homeowner is no better situated than the hired worker to furnish appropriate safety devices and to procure suitable insurance protection
 
 (see, Cannon v Putnam,
 
 76 NY2d 644, 649). As stated by the Law Revision Commission, "an exemption for one and two family dwelling owners is needed” because "the theory of dominance of the owner over the subcontractor or worker breaks down at this level” (Recommendation of NY Law Rev Commn, reprinted in 1980 McKinney’s Session Laws of NY, at 1659).
 

 Mindful of this history and remedial purpose, we have avoided an overly rigid interpretation of the homeowner
 
 *368
 
 exemption and have employed a flexible "site and purpose” test to determine whether the exemption applies. For example, in
 
 Cannon,
 
 we concluded that the homeowner was exempt from liability, even though some commercial activity occurred on the property, where the work had been "undertaken solely in connection with defendant’s residential use of the property” (76 NY2d, at 650,
 
 supra; see also, Khela v Neiger,
 
 85 NY2d 333).
 

 In keeping with our pragmatic interpretation of the homeowner exemption, we have declined to apply the exemption where a building, though structurally a one-family dwelling, was used by its owner exclusively for commercial purposes
 
 (see, Van Amerogen v Donnini,
 
 78 NY2d 880). The exemption, we held, is not designed to protect homeowners "who use their one or two-family premises entirely and solely for commercial purposes and who hardly are lacking in sophistication or business acumen such that they would fail to recognize the necessity to insure against the strict liability imposed by the statute”
 
 (id.,
 
 at 882;
 
 see also, Lombardi v Stout,
 
 80 NY2d 290).
 

 The question posed by these cases is how to apply the site and purpose test when a single structure is used for both residential and commercial purposes. Unlike the situation where a one- or two-family dwelling serves only commercial purposes, in which case the dwelling is "more accurately considered [a] commercial enterprise[ ]”
 
 (Lombardi, supra,
 
 at 297), a residence that houses a business may nevertheless retain its character as a home. As we noted in
 
 Cannon,
 
 a "homeowner who hires someone to paint his own living-room ceiling should be afforded the benefit of the statutory exemption from liability even if he also maintains a business on the property. In terms of the legislative purpose, such a homeowner is no more or less likely to 'know about, or provide for the responsibilities of absolute liability’ for home-improvement-related injuries than is a similarly situated homeowner who happens to conduct a business on a separate parcel of land” (76 NY2d, at 650,
 
 supra
 
 [citation omitted]).
 

 Accordingly, we conclude that when an owner of a one- or two-family dwelling contracts for work that directly relates to the residential use of the home, even if the work also serves a commercial purpose, that owner is shielded by the homeowner exemption from the absolute liability of Labor Law §§ 240 and 241.
 

 
 *369
 
 III.
 

 Applying these principles to the cases now on appeal, we conclude that the work in each case directly related to the residential use of the property and that each defendant, an owner of a one-family dwelling who did not direct or control the work, is exempt from liability under Labor Law § 240 (1) and § 241 (6).
 

 In
 
 Buell,
 
 the repair work on the roof was undertaken to preserve the structural integrity of the barn itself and to protect Buell’s own possessions and those of his neighbor which he stored at no charge, as well as the golf carts stored for a fee. Though the repair work served the commercial purpose of protecting the stored golf carts from weather damage, any commercial benefit was ancillary to the substantial residential purpose served by fixing the leaking barn roof. Finally, the fact that the work was performed on the barn and not on the residential home itself does not alter the analysis; the barn, located on Buell’s property and used in part for personal storage purposes, is akin to a garage and should be considered an extension of the dwelling within the scope of the homeowner exemption.
 

 Similarly, in
 
 Anderson,
 
 we conclude that the addition of the bedroom was directly related to the residential use of the home and that Flanagan is exempt from the absolute liability of Labor Law § 240. Flanagan decided to add the bedroom because, although two bedrooms were located on the second floor of her home, no bedroom was located on the first floor. Although a commercial purpose may also be served by the bedroom addition, the record shows that Flanagan uses the downstairs bedroom for her own residential purposes.
 

 Accordingly, in
 
 Bartoo,
 
 the judgment appealed from and the orders of the Appellate Division brought up for review should be affirmed, with costs, and in
 
 Anderson,
 
 the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa,. Smith and Levine concur.
 

 In
 
 Bartoo v Buell:
 
 Judgment appealed from and orders of the Appellate Division brought up for review affirmed, with costs.
 

 In
 
 Anderson v Flanagan:
 
 Order affirmed, with costs.